IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JERRY GARDNER,

               Plaintiff,                            CV-05-691-CO

       v.                                     OPINION AND ORDER

JO ANNE B. BARNHART, Commissioner of Social
Security,

                  Defendant.             

**MARTIN R. COHEN**
4040 Douglas Way
P.O. Box 1229
Lake Oswego, OR 97035
**LINDA S. ZISKIN**
3 Monroe Parkway, Suite P
Lake Oswego, OR 97035
       Attorneys for plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 SW Third Ave, Suite 600
Portland, Oregon 97204

1 - OPINION AND ORDER

**MICHAEL McGAUPHRAN**
Office of the General Counsel
**RICHARD M. RODRIGUEZ**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Ave, Suite 2900 M/S 901
Seattle, Washington 98104
        Attorneys for defendant

COONEY, Magistrate Judge:

## INTRODUCTION

Plaintiff Jerry Gardner brings this action for judicial review of a final decision of the Commissioner of Social Security denying his applications for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

The Commissioner moves the court to remand for further proceedings to correct errors in her decision (docket # 19). Gardner opposes additional proceedings and seeks a remand for the calculation and immediate award of benefits. The parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with F.R.C.P. 73 and 28 U.S.C. § 636(c). The Commissioner's motion to remand for further proceedings is granted and the Commissioner's final decision is remanded for further administrative proceedings.

## BACKGROUND

Gardner was born April 5, 1951. He has the equivalent of a high school education plus one year of college. He worked as a ship superintendent, shipyard pipe-fitter foreman and gas pipe-fitter in the heating and air conditioning industry.

Gardner began to experience lumbar pain after falling from a ladder in January 2000. In May 2000, an MRI showed a L5-S1 herniated nucleus pulposis with significant pressure on the right S1 nerve root. In June 2000 Gardner underwent a laminectomy to relieve right-sided lumbar pain and radiculopathy. His symptoms persisted after surgery and continue to limit his ability to lift, bend, twist and sit. Gardner alleges he has been unable to work since April 12, 2000.

The ALJ initially denied Gardner's applications in a decision issued June 24, 2003. The Appeals Council remanded that decision. After additional administrative proceedings, the ALJ denied Gardner's applications again on October 13, 2004. That decision is now before this court. The Commissioner concedes the decision cannot be upheld and seeks a remand for more administrative proceedings.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner uses a sequential process of up to five steps for determining whether a person is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. Gardner challenges the ALJ's evaluation of the evidence and conclusion at step five of the sequential process.

For the purposes of step five, the Commissioner must first assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related

activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a); SSR 96-8p.

At step five, the Commissioner must determine whether the claimant can perform work that exists in the national economy.  *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).  Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do.  *Yuckert*, 482 U.S. at 141-42; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the Commissioner meets this burden, then the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ's FINDINGS

The ALJ found that Gardner is impaired by back pain, a hearing deficit, substance abuse in reported remission and nonsevere effects of an adjustment disorder.   He assessed Gardner's RFC as follows:

> I find the claimant retains the residual functional capacity to perform a modified range of light exertion work activity.  He can lift, push and/or pull up to 10 pounds frequently and up to 20 pounds occasionally.  He can stand and/or walk for about six hours of an eight-hour workday.  He can sit for less than six hours of an eight-hour workday.  He can frequently balance.  He can occasionally kneel; crouch; crawl; stoop; and climb ranps, stairs, ladders, ropes, or scaffolds.   In addition, he is limited to work performed in environments free from vibrations and exposure to loud background noise.

Tr. 17.[1]

---

[1]Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

The ALJ found that Gardner retained the RFC to perform work in the national economy.  He identified two examples of such work drawn from the testimony of the vocational expert (VE): scheduler and order clerk.  Tr. 22.

## STANDARD FOR REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.), *cert. denied*, 531 U.S. 1038 (2000).  The issue turns on the utility of further proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision.  *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989).

Improperly rejected evidence should be credited and an immediate award of benefits directed where:  (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.  *Harman v. Apfel*, 211 F.3d at 1178 citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  Of course, the third prong of this test is actually a subpart of the second.  *See Harman*, 211 F.3d at 1178 n. 7.

## DISCUSSION

Gardner contends the ALJ failed to assess his RFC accurately because he improperly discounted the opinion of Michael Norris, M.D., his primary care physician.  Gardner also argues

that the ALJ failed to carry the burden of proof at step five because the occupations he identified as examples of work Gardner could perform require functional capabilities beyond the limitations in the ALJ's RFC assessment.

The Commissioner concedes judgment to Gardner, but asserts that the ALJ properly evaluated Dr. Norris's opinion. She argues that further proceedings are necessary to clarify the opinions of medical sources, evaluate Gardner's mental impairments in accordance with the Psychiatric Review Technique required by the regulations and obtain vocational evidence based on an accurate RFC assessment.

## I.    Medical Source Statements of Dr. Norris

Dr. Norris treated Gardner in February 2000, for sciatic nerve root irritation on the right side which resolved within two weeks. Tr. 219. In April 2000, Dr. Norris saw Gardner for a lumbar strain that developed over several weeks into a sciatic condition with pain radiating down the entire right leg. Tr. 217-18.

Dr. Norris did not see Gardner again until September 2001. Gardner reported pain in the back and right leg persisting after a L5-S1 laminectomy performed by Francisco Soldevilla, M.D. the previous year. Gardner reported that he had been given a permanent lifting restriction of 30 pounds. Dr. Norris found Gardner's condition unclear and referred him back to Dr. Soldevilla. Tr. 216.

Dr. Norris then completed a worksheet titled Physical Residual Functional Capacity Report dated November 14, 2001. The worksheet provided boxes for indicating restrictions in lifting, carrying, standing, walking and sitting, as well as postural and environmental limitations. Dr. Norris left most of the worksheet blank, but provided marginal notations indicating that Gardner could not

work an 8-hour day.  He did not make objective findings or specify functional limitations or the work-related activities they would preclude.  Tr. 214-15.

Gardner next had an office visit with Dr. Norris in March 2002 to get referrals for a physical capacities evaluation and a neurosurgical opinion.  Tr. 295.  Dr. Norris examined Gardner in April 2002, but his only objective finding was a limitation of flexion in the back.  He recommended that Gardner continue walking exercise and looking for alternative kinds of work.  Tr. 294.  In October 2002, Gardner saw Dr. Norris for a bee sting.

In January 2003, Gardner returned at the request of his insurance company.  There is no record that Dr. Norris performed a physical examination at that office visit.  He indicated in his treatment notes that Gardner was "not able to work and not able to sit for very long at a time."  Tr. 293.

Gardner argues that the ALJ improperly rejected Dr. Norris's "uncontradicted" disability opinion.

The ALJ can reject a treating physician's opinion that is not contradicted by another physician only for clear and convincing reasons.  *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002).  He can reject a treating physician's opinion in favor of the conflicting opinion of another physician if he makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id.* at 957 quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Dr. Norris's disability opinion was contradicted by the opinions of other physicians.  Dr. Soldevilla was in a good position to assess Gardner's limitations.  In September 2000, after performing surgery on Gardner's back and post operative follow-up with work-hardening and

physical capacities evaluation, Dr. Soldevilla concluded that Gardner was "medically stationary with the ability to return to work in the MEDIUM range of physical demand." Tr. 189. He wrote a work release on November 21, 2000, indicating that Gardner could return to work with a 30-pound lift restriction and occasional twisting and bending. Tr. 196. Dr. Soldevilla did not believe Gardner was disabled, he thought Gardner needed vocational guidance to obtain new work within his medium capacity rating. Tr. 189.

Gardner underwent a comprehensive orthopedic examination by Tatsuro Ogisu, M.D., in December 2002. Dr. Ogisu found Gardner capable of working full-time with exertional limitations consistent with the regulatory definition of light work. Tr. 276-79. In March 2004, Gardner underwent an orthopedic examination and physical capacities evaluation by Donald Ramsthel, M.D. Dr. Ramsthel found Gardner capable of working full time at the medium level of exertion with non-exertional limitations. Tr. 287-90.

The ALJ discounted Dr. Norris's opinion in favor of the opinions of Drs. Soldevilla, Ogisu and Ramsthel. Tr. 20-21. He found Dr. Norris's opinion less supported by treatment records and objective findings than the well-documented opinions of the other physicians. This reasoning is abundantly supported by the record. Dr. Soldevilla based his opinion on his surgical treatment record, follow-up examinations and results of work-hardening and physical capacities assessment. Drs. Ogisu and Ramsthel performed comprehensive orthopedic examinations and physical capacities evaluations.

In contrast, Dr. Norris's treatment notes reflect primarily subjective reporting and very infrequent physical examinations. When he completed the Physical Residual Functional Capacity worksheet in November 2001, Dr. Norris had only seen Gardner twice in the preceding 17 months.

8 - OPINION AND ORDER

There is no indication that Dr. Norris performed orthopedic examinations during the two office visits and he made no findings with respect to specific functional limitations.  Tr. 216.

Dr. Norris's January 2003 treatment note indicating that Gardner was "not able to work and not able to sit for very long at a time" appears to be a record of Gardner's subjective report, rather than an opinion of his physical capacities.  Tr. 293.  As already noted, there is no indication that Dr. Norris performed a physical examination or made objective findings to support such an opinion.

The court concludes that the ALJ offered adequate reasoning supported by substantial evidence in the record for discounting Dr. Norris's disability opinion.  Accordingly, his statements provide no basis for an immediate award of benefits.

II.    **Vocational Evidence**

Gardner argues that the vocational expert and the ALJ identified examples of occupations he can perform which require sitting and hearing abilities that he does not have.  This argument is not supported by the record.

The vocational expert testified that the two occupations identified by the ALJ could be performed by alternating sitting and standing positions.  Tr. 362.  This is consistent with the ALJ's RFC assessment that Gardner is able to stand for a total of six hours and sit for a total of less than six hours in an 8-hour workday.  Tr. 17.

The vocational expert testified that the two occupations required use of the telephone in an office setting without background noises.  Tr. 359.  This is consistent with the ALJ's RFC assessment which excluded work with exposure to loud background noises.  Tr. 17.  Before he obtained a hearing aid, Gardner testified that he had difficulty using the telephone.  Tr. 333-34.  After receiving a hearing aid, he testified that his primary difficulty was distinguishing background noises.

Tr. 379. The ALJ's RFC assessment and the vocational hypothetical question reasonably reflect the evidence of Gardner's hearing loss.

Moreover, even if Gardner's argument were correct, it would not compel an immediate award of benefits. Even if Gardner could not perform the two occupations identified by the ALJ, it is not clear that he is unable to perform other work in the national economy.

Further proceedings will permit the Commissioner to reevaluate the evidence, obtain appropriate evidence of psychological impairment, arrive at an accurate RFC assessment and elicit testimony from a vocational expert based on hypothetical assumptions that accurately reflect all of Gardner's limitations. A remand for corrective proceedings is appropriate where such proceedings will serve a useful purpose. *Harman v. Apfel,* 211 F.3d at 1178; *Rodriguez v. Bowen*, 876 F.2d at 763.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Commissioner's motion for remand (docket # 19) is GRANTED. The Commissioner's decision is REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this _13___ day of April, 2006.

_____/s/_____
John P. Cooney
United States Magistrate Judge

10 - OPINION AND ORDER